**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

COINVET, INC.,
a Florida corporation,

   Plaintiff,

vs.

MATRIX NUTRITION, LLC,
an Arizona limited liability company,
and MATT HOLT, individually,

   Defendants.

_____/

**COMPLAINT**

  Plaintiff, COINVET, INC. ("Coinvet"), by and through its undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, sues Matt Holt, individually, ("Holt") and Matrix Nutrition, LLC, ("Matrix") (collectively, "Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

  1. This is an action by Coinvet against Holt and Matrix, for damages in excess of $75,000, exclusive of attorneys' fees and costs, for (a) breach of contract duty; (b) breach of implied warranty of merchantability; (c) breach of implied warranty of fitness for a specific purpose; (d) action for intentional misrepresentation; and (e) fraud in the inducement.

  2. Jurisdiction and Venue are proper in the Southern District of Florida, and in particular, in Miami-Dade County, Florida, because this is where the contracts were negotiated, communications were directed to this County, services were performed and were to be performed in this County, payments were made in this County and the injuries were suffered in this County.

1

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C § 1332(a)(2). There is complete diversity of citizenship among the parties, because Defendants are citizens of the State of Arizona and Plaintiff is a citizen of the State of Florida, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest, costs and attorneys' fees.

4. This Court has personal jurisdiction over the Defendants as they conducted all of the transactions related to this Complaint in Miami-Dade County, Florida and thereby do business in Miami-Dade County, Florida.

5. Venue is proper pursuant to 28 U.S.C § 1391(a) because: (a) the causes of action set forth herein accrued in whole or in part in Miami-Dade County, Florida; and (b) a substantial part of the events or omissions giving rise to the claims occurred in Miami-Dade County, Florida.

## PARTIES

6. Plaintiff, Coinvet, is a Florida corporation which maintains a principal place of business in Miami-Dade County Florida.

7. Defendant, Matrix Nutrition, LLC, is an Arizona Limited Liability Company with its principal office located 6760 W. Allison Road, Chandler, AZ 85226. Its registered agent for service of process is Defendant Holt at 11809 War Paint Dr., Phoenix, AZ 85044.

8. Defendant Holt is a resident of Arizona believed to reside at 11809 War Paint Dr., Phoenix, AZ 85044.

## GENERAL ALLEGATIONS

### A. The Business of Coinvet

9. Coinvet has been in business since 2008 as a reseller and exporter of products for various industries.

10. Among other products, Coinvet buys and resells animal feeds and products needed by the Latin American agricultural production market.

11. One such animal feed product is Methionine Hydroxy Analog ("METHIONINE").

12. In more simple terms, METHIONINE is a necessary dietary supplement which humans get from foods such as eggs and meats.

13. In animals, it is a necessary additive that has been linked to an increased lifespan for the animal.

14. There are a limited number of manufacturers of METHIONINE worldwide.

15. In recent years, there has been a shortage of the substance so supplies are hard to find.

### B. Matrix

16. Matrix is an Arizona company that markets itself as specializing in "in Beef, Dairy, Poultry, Swine, Companion Animal, Aquaculture, Equine and Human nutritional products."

17. Holt is, upon information and belief, the sole shareholder and president of Matrix and, at all times relevant hereto, controlled the actions of Matrix.

18. Matrix does not manufacture METHIONINE. Matrix buys its METHIONINE from Sumitomo Chemical America ("Sumitomo"), one of a limited number of manufacturers.

19. According to Mr. Holt, Sumitomo sells to Matrix the METHIONINE in large containers of 20,000kg and Matrix puts it in small palette sized containers of 1,200 kg known as totes. A tote has an opening at the top for filling and an opening on the bottom with an attachable spout for emptying.

20. A tote, when it is in good order, should have a tie wrap seal on the top and bottom openings when properly closed, a certificate of quality from the manufacturer (Sumitomo) and a spout affixed to the exterior ready to be attached to the bottom opening for operation.

21. The certificate of quality provides the specifications that the product has to meet in order to be merchantable and fit for its intended purpose.

C. **Matrix Offers METHIONINE**

22. In October of 2014, Coinvet was looking for METHIONINE for several agricultural customers in Venezuela.

23. Coinvet learned that Matrix was offering a quantity of METHIONINE for sale which it had obtained from Sumitomo.

24. On November 14, 2014, Matrix invoiced Coinvet $143,519.04, for 24 totes.

25. On November 25, 2014, Coinvet paid Matrix $100,000.00 by wire transfer and $43,519.04 by check.

26. On December 29, 2014, Coinvet received the first container bearing 16 totes.

27. Shortly thereafter, Coinvet received further requests for the product.

28. On December 04, 2014, Matrix invoiced Coinvet $47,731.20 for another 8 totes.

29. On the same day, Coinvet wired Matrix the full $47,731.20.

30. On January 13, 2015, Coinvet received the second container bearing 16 totes.

31. This second container was dispatched it to a customer in Venezuela on April 2,

2015.

32. On February 05, 2015, Matrix issued an invoice in the form of a Sales Order to Coinvet for $211,643.53 for 32 totes.

33. On February 13, 2015, Coinvet wired Matrix the $211,643.53.

34. On February 25 and 30th, Coinvet received first the third and then the last container.

35. One was sent out to Coinvet's customer on March 9, 2015, and the other on April 2, 2015.

36. Coinvet paid a total sum of $402,983.77 for goods that it assumed were of the expected quality. Coinvet relied and depended on Defendants' representation that the product would be of the quality specified in the Sumitomo certificates of quality.

### D. Serious Problems with the Quality of the METHIONINE are Revealed

37. On April 20, 2015, a container of 20 pallets was shipped to Protinal Del Zulia, CA, one of Venezuela's largest and most respected animal feed companies.

38. Initially, Coinvet received notice from its customers that the totes were missing the certificate of quality from Sumitomo which should have been attached to the exterior. Coinvet contacted Matrix and asked for these.

39. Shortly thereafter, Coinvet received calls and e-mails expressing that the METHIONINE was adulterated by high amounts of water and could not be used.

40. Coinvet immediately sent its representative in Venezuela to inspect the shipment.

41. METHIONINE is normally characterized by two physical properties.

42. It is very dark and opaque bearing a very strong and pungent smell created by the organics in the liquid.

43. Upon visual and physical inspection, Coinvet found that the samples from different totes showed different shades showing that they varied in water content. *See Exhibit A samples of methionine from second shipment.*

44. More telling of the damage to the METHIONINE was the slight or complete absence of odor in some of the samples. This was clear evidence that the organics in the substance had been diluted and tainted.

45. A physical inspection of the totes also revealed that the totes were not in the usual condition.

46. Unlike the totes in the initial shipment which was received from Matrix, many of the totes were dirty, badly maintained, and were missing the top and/or bottom seals. Some of the totes that had not been opened already had the spouts affixed to the bottom opening. *See Exhibit B totes from second shipment.*

47. Testing conducted on the totes by Protinal from the second shipment revealed water content varying substantially from tote to tote from between 11.01% to as high as 55.03% and in one case 74.72%. *See Exhibit C observations from methionine.*

48. Many of the totes were clearly used and had labeling referring to a different substance "Sodium Butyrate."

49. On or about April 20, 2015, Coinvet contacted Matrix by phone and informed them that there were serious problems with the totes in the products.

50. This call was followed on April 11, 2015, by a conference call using the internet service Skype at which Mark Holt asked for further information.

51. On April 22, 2015, Coinvet e-mailed Mark Holt at Matrix a detailed description of the problems with the totes and asked Matrix to conduct its own testing and provide an

6

explanation of the situation.

52. On April 28, 2015, Coinvet e-mailed Mark Holt at Matrix photos and the observations of the totes. The e-mail specifically noted that only two of the totes matched the specifications in the relevant Sumitomo quality control certificate.

53. Mr. Holt failed to respond to these e-mails or to provide a solution.

### E. Holt's Conduct Has Damaged Coinvet

54. Matrix induced Coinvet to purchase four shipments of METHIONINE at a cost of $403,893.77 based on the promise that the product was of the quality in the Sumitomo certificates of quality.

55. Coinvet has also spent substantial additional funds in responding to irate customers, inspecting the defective products and trying to get relief from Defendants.

56. Coinvet is facing a risk of litigation from its customers as well as a substantial damage to its public reputation and goodwill.

57. Matrix has been put on notice and has had the opportunity to explain its shipment of degraded and contaminated product but has failed to do so or to take any steps to mitigate the damages that it has caused.

58. Mr. Holt has been aware of the problems and has control of the actions and representations by Matrix which are causing Coinvet this serious and, potentially, irreversible injury.

59. Defendants' failure to take back the tainted product, reimburse the moneys paid and pay to correct damage to Coinvet's good will continue to cause harm.

60. Coinvet has complied with all conditions precedent to the bringing of this action, or such conditions have been waived or excused.

## COUNT I

## **BREACH OF CONTRACT AGAINST MATRIX**

61. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 60.

62. Matrix entered into a series of contracts to sell to Coinvet certain quantities of METHIONINE of a specific quality for use as animal feed.

63. Coinvet paid for these goods, received the shipments from Matrix and forwarded the METHIONINE to Coinvet's customers.

64. Upon receipt by Coinvet's customers, the great majority of the shipment was found to be non-conforming and unusable for its intended purpose.

65. Matrix failed to explain why the METHIONINE failed to meet the promised quality or to take any steps to stop the damage caused to Coinvet through the delivery of the non-conforming goods.

66. Matrix breached its contract with Coinvet by failing to deliver the goods that it had claimed to sell in the quality that it had claimed to sell.

67. Coinvet was injured as a result of Matrix's breach.

68. Coinvet has had to spend costs in seeking enforcement of this contract, in investigating the breach and in prosecuting this claim.

69. Coinvet is entitled to attorneys' fees and costs pursuant to Florida Statutes § 57.105.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages in an amount to be shown at trial together with all interest, costs, and attorney's fees as provided by law.

## COUNT II

### BREACH OF IMPLIED WARRANTY OF <u>MERCHANTABILITY AGAINST MATRIX</u>

70. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 60.

71. The cause and origin of the damages was the result of Matrix's breach of the *Implied Warranty of Merchantability,* imposed by *Fla. Stat.* § 672.314 *et al.*

72. Coinvet paid Matrix for the purchase of certain merchandise.

73. The merchandise has proved to not be merchantable, does not pass in the trade under the contract description, are not fit for the ordinary purpose for which they are used, exceed variations allowed for such products, were not adequately contained and labeled and do not conform to the promises or affirmations of fact made on the container or label if any.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages in an amount to be shown at trial together with all interest, costs, and attorney's fees as provided by law.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF <u>FITNESS FOR A SPECIFIC PURPOSE AGAINST MATRIX</u>

74. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 60.

75. The cause of action alleged in this Count is brought pursuant to *Fla. Stat. §672.315 et al.* for failure of fitness for a specific purpose.

76. Coinvet paid Matrix for delivery of certain merchandise which Matrix knew was intended for resale.

77. Matrix, at the time of contracting, had reason to know the particular purpose for which the goods were required and that the Coinvet was relying on the seller's skill or judgment to furnish suitable goods.

78. Matrix failed to do so and the goods were non-conforming.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory damages in an amount to be shown at trial together with all interest, costs, and attorney's fees as provided by law.

## COUNT IV

### ACTION FOR INTENTIONAL MISREPRESENTATION AGAINST ALL DEFENDANTS

79. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 60.

80. Coinvet paid Matrix for the purchase of certain merchandise.

81. Much of the merchandise that Matrix delivered did not conform to specification and was, generally, diluted and unusable.

82. Upon information and belief, the evidence shows a pattern of diluting and thinning down large quantities of the METHIONINE provided with water.

83. Defendants had represented verbally that the METHIONINE that was being provided was unadulterated and of the quality certified by the manufacturer Sumitomo.

84. These were misrepresentations of material facts.

85. Coinvet reasonably relied on these misrepresentations and has been injured as a result.

86. Defendants knew that the facts they were representing were untrue and that Coinvet would rely upon them.

87. Defendants acted with malicious intent.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory, consequential and incidental damages in an amount to be shown at trial, together with all interest, costs, and attorney's fees as provided by law.

## COUNT V

### FRAUD IN THE INDUCEMENT
### AGAINST ALL DEFENDANTS

88. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 60.

89. Defendants offered to sell Coinvet certain quantities of METHIONINE which met manufacturer's certificate of quality.

90. Defendants knew that the product they sold Coinvet was diluted with water and unusable.

91. Defendants had the intent to induce Coinvet to purchase the adulterated METHIONINE knowing that the product would be sent overseas and expecting that the adulteration would not be discovered.

92. Coinvet relied on Defendants' false representations to its detriment and was induced into inviting Holt to purchase the product from Matrix and ship the product to its customers.

93. Coinvet reasonably believed Defendants, and now, Coinvet has suffered damages because of its justifiable reliance on their representations.

WHEREFORE, Plaintiff demands judgment against the Defendants for compensatory, consequential and incidental damages in an amount to be shown at trial, together with all interest, costs, and attorneys' fees as provided by law.

Dated: June 10, 2015                        Respectfully submitted,

                                          By:__s/Jorge Espinosa_____
                                              Jorge Espinosa
                                              FL Bar No.  779032
                                              jespinosa@etlaw.com
                                              Francesca Russo
                                              FL Bar No.  174912
                                              Frusso@etlaw.com
                                              ESPINOSA | TRUEBA, PL
                                              1428 Brickell Avenue, Suite 100
                                              Miami, FL  33131
                                              Tel:  305-854-0900
                                              Fax:  855-854-0900
                                              *Counsel for Plaintiff, Coinvet, Inc.*